## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term 2024

(Argued: December 1, 2023      Decided: September 23, 2024)

Nos. 22-599-cr (L), 22-602-cr (Con)

———————————————————

UNITED STATES OF AMERICA,

*Appellee,*

-v.-

ERIC TOMPKINS,

*Defendant-Appellant.*

———————————————————

Before:     LIVINGSTON, *Chief Judge*, MENASHI, and KAHN, *Circuit Judges*.

Defendant-Appellant Eric Tompkins appeals from a judgment of the United States District Court for the Northern District of New York (Thomas J. McAvoy, *District Judge*), convicting him, upon entry of a conditional plea preserving a Fourth Amendment issue, of failing to register as a sex offender in violation of 18 U.S.C. § 2250(a), and of possessing child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2).  Tompkins argues that the district court should have suppressed images of child pornography found on a SanDisk flash memory card ("SD card") inserted into the back of his Samsung cellular phone because the search warrant that authorized the search of his phone did not

1

separately identify the SD card as a place to be searched. We disagree. The warrant authorized a search of the cellular phone for the purpose of recovering specified information, in whatever form and by whatever means that information was created or stored, including any form of electronic storage. We conclude that the search of the SD card—which is itself a form of electronic storage and which was inserted into the cellular phone and attached to it—fell within the scope of the search warrant. Accordingly, we affirm the judgment of the district court.

AFFIRMED.

| | |
|---|---|
| FOR APPELLEE: | PAUL D. SILVER, Assistant United States Attorney, *on behalf of* Carla B. Freedman, United States Attorney for the Northern District of New York, *for United States of America*. |
| FOR DEFENDANT-APPELLANT: | DANIEL M. PEREZ, Law Offices of Daniel M. Perez, Newton, N.J., *for Eric Tompkins*. |

DEBRA ANN LIVINGSTON, *Chief Judge*:

Defendant-Appellant Eric Tompkins appeals from a March 16, 2022 judgment of the United States District Court for the Northern District of New York (McAvoy, *J.*), convicting him, upon entry of a conditional plea preserving the instant Fourth Amendment issue, of failing to register as a sex offender in violation of 18 U.S.C. § 2250(a), and of possessing child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2). Tompkins was sentenced principally to a 120-month term of imprisonment for his possession of child pornography, to

run concurrently with a 41-month term imposed for his failure to register as a sex offender.

On appeal, Tompkins challenges the district court's denial of his motion to suppress digital images of child pornography that the government discovered while examining a SanDisk Micro Secure Digital Card ("SD card") that was inserted into the slot for it inside Tompkins's Samsung cellular phone. Four images were initially discovered on the SD card during a search conducted pursuant to a warrant that authorized search of the cellular phone for evidence related to Tompkins's failure to register. Upon discovery of these images, investigators ceased their search and obtained a second search warrant for evidence related to the possession, receipt and distribution, and transportation of child pornography. This second warrant separately identified the phone and the SD card as property to be searched. A second search revealed over two dozen additional images of child pornography on the SD card.

Tompkins argues that because the first search warrant did not specify the SD card as a subject device, the government lacked authorization to examine it during the initial search, tainting the subsequent search as well. We disagree. The first search warrant expressly authorized a search of the cellular phone for the

purpose of locating information evidencing Tompkins's failure to register, "in whatever form and by whatever means . . . created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) . . . ." App'x 53. The warrant thus clearly authorized the search of an SD card—which is itself a form of electronic storage—inserted into the cellular phone and attached to it. Concluding that Tompkins's arguments on appeal are without merit, we AFFIRM the district court judgment.

## BACKGROUND[1]

### I. Tompkins's Failure to Register

In October 2018, the United States Marshals Service ("USMS") opened an investigation based on employment records indicating that Tompkins had been working in New York State since at least 2017 but had failed to register as a sex offender. Tompkins had been convicted in Washington State in 2009 of engaging in sexual contact with a person between the age of fourteen and sixteen years old. As part of his sentence, he was required to register as a sex offender and to update his registration within 10 days of establishing residence or employment in another

---

[1] Unless otherwise indicated, the factual background presented here is derived principally from: (1) undisputed facts from the record of proceedings on the motion to suppress; (2) the district court's factual findings; and (3) the April 19 and August 14, 2019 search warrants and accompanying affidavits.

state. Tompkins complied with these requirements in the years immediately following his conviction, but the local sheriff's office in Washington State thereafter had difficulty locating him. In August 2016, Washington State officials learned that Tompkins was no longer residing at his registered address. Between August 2016 and February 2017, Tompkins's whereabouts remained unknown and a warrant issued for his arrest. Employment records subsequently showed that Tompkins had obtained work first at a car wash in Saratoga Springs, New York in February 2017, and then at a fast-food restaurant in Clifton Park, New York in January 2018. In each instance, Tompkins's employment records indicated that he resided in Clifton Park, New York, but a records search performed by investigators with the New York State Division of Criminal Justice Services showed that Tompkins had not registered as a sex offender in New York State.

On March 18, 2019, Magistrate Judge Daniel J. Stewart in the Northern District of New York issued a warrant for Tompkins's arrest for his failure to register and update his sex offender registration as required by the Sex Offender Registration and Notification Act ("SORNA"), 18 U.S.C. § 2250(a). Tompkins was arrested on March 28, 2019 at his then-residence in Corinth, New York. After

his arrest, Tompkins admitted that he had not registered but claimed he did not know he was required to do so.

## II. Discovery of Child Pornography on Tompkins's Device

United States Deputy Marshal Robert Imburgio seized a Samsung model SM-J336AZ cellular phone from Tompkins at the time of his arrest. On April 19, 2019, Deputy Marshal Imburgio applied for a search warrant to conduct a forensic examination of the phone for the purpose of "extract[ing] . . . electronically stored information" related to Tompkins's failure to register in violation of 18 U.S.C. § 2250(a). App'x 36, 38, 53. In support of the application, Deputy Marshal Imburgio submitted an affidavit describing the subject device, the factual basis for probable cause to believe evidence of failure to register would be found on Tompkins's cellular phone, and the process by which forensic examination of electronic storage media is conducted.

The subject property is described in Attachment A of the warrant as follows:

The property to be searched is a Samsung Model SM-J336AZ cell phone bearing serial number R28K53A6L4T currently located in the United States Marshals Service evidence locker located in Albany New York (hereinafter the SUBJECT DEVICE).

App'x 52. Attachment A further describes the scope and intended purpose of the search, providing that:

This warrant authorizes the forensic examination of the SUBJECT DEVICE for the purpose of identifying the electronically stored information described in Attachment B.

*Id.* Attachment B lists distinct types of information that law enforcement expected to obtain from the search, including records indicating Tompkins's "location and residence, including [in] photographs," "employment information," "registration as a sex offender, . . . in New York and Washington," and "Tompkins'[s] state of mind" relating to the suspected SORNA violation.[2] App'x 53. Attachment B further defines the terms "records" and "information" to include:

[A]ll of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

*Id.*

_____

[2] Deputy Marshal Imburgio summarized the probable cause to believe such evidence would be found on Tompkins's cellular phone in his supporting affidavit, in which he described Tompkins's prior conviction for Child Molestation in the Third Degree in Washington, his later evasion of local authorities, and his presence in New York State without having updated his sex offender registration, as required by law. The affidavit highlights a "selfie" photograph that was posted on Tompkins's Facebook account, which depicted him "in front of what appear[ed] to be a residence where he was staying . . . in Clifton Park, New York." App'x 43. The "selfie" reportedly resembled "the type that are typically taken using a cell phone." *Id.*

Based on the warrant application and supporting affidavit, Magistrate Judge Stewart signed and issued the search warrant. Shortly thereafter, USMS transferred possession of the cellular phone to the Computer Crimes Unit ("CCU") of the New York State Police and requested a forensic examination. Deputy Marshal Imburgio informed the CCU that the Samsung cellular phone was protected by a PIN code that he did not have. Between June 4, 2019 and June 9, 2019, CCU investigators attempted to forensically examine the cellular phone but were unsuccessful at unlocking it without the PIN code. However, CCU Investigator Peter Kozel was able to examine a SanDisk Micro SD card that was located within and attached to the phone in an SD port just above the battery holder.[3] While searching its contents, Investigator Kozel observed at least four images in the SD card's deleted memory space that depicted the sexual exploitation of minors. After discovering these images, Investigator Kozel ceased further review of the SD card and reported his findings to Deputy Marshal Imburgio.

---

[3] As noted by the district court, when the back cover is removed from Tompkins's cellular phone, the SD Card, inserted within the phone into its SD port, is visible.

On August 14, 2019, Special Agent Brian Seymour of the Federal Bureau of Investigation applied to Magistrate Judge Stewart for a second warrant to search the cellular phone and SD card, this time for "electronically stored information" related to the possession of child pornography, its receipt and distribution, and the transportation of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B), 2252A(a)(2)(A), and 2252(a)(1).   App'x 62, 80.   In a section entitled "Identification of the Device to Be Examined," Special Agent Seymour wrote:

> a. a Samsung model SM-J336AZ (Galaxy J3 Neo), IMEI: 355269091218588, and serial number R28K53A6L4T that was manufactured in China ("SUBJECT PHONE"); and
>
> b. a SanDisk Micro SD XC I card bearing serial number 88460VJG50FF, that was attached to the Samsung phone ("SUBJECT CARD").

App'x 63.   Special Agent Seymour's affidavit states that Magistrate Judge Stewart had previously "issued a search warrant for the SUBJECT DEVICE (inclusive of the SUBJECT PHONE and SUBJECT CARD), to search for information" related to Tompkins's failure to register.[4]   App'x 65.   He described Investigator Kozel's discovery of the four images on the SD card, which provided the basis for probable

---

[4] Special Agent Seymour attached the first search warrant as an exhibit to his application for the second warrant.

cause to believe additional evidence of child pornography offenses would be uncovered through the forensic examination of the cellular phone and its associated SD card.

Magistrate Judge Stewart issued the second warrant on August 14, 2019. Investigator Kozel undertook a second forensic search of the cellular phone and its associated SD card in reliance on the August 2019 warrant. This search revealed twenty-six images of child pornography on the SD card.

A grand jury had indicted Tompkins on April 25, 2019, on one count of failing to register and update his registration as required by SORNA. Indictment, *United States v. Tompkins*, No. 1:19-cr-165, Dkt. 9 ("SORNA Indictment"). A separate grand jury indicted him on January 30, 2020, on one additional count of possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2). Indictment, *United States v. Tompkins*, No. 20-cr-037, Dkt. 1 ("CP Indictment").

## II. Procedural History

### A. Motion to Suppress

Before the district court, Tompkins moved to suppress the images of child pornography located on the SD card, contending that Attachment A of the April

2019 warrant "only [authorized] the search of the phone itself" and not the SD card contained within it. App'x 23. He further argued that because the decision by law enforcement to search the SD card constituted a "blatant disregard" of the parameters of the first search warrant, all evidence discovered during the second warrant-based search should also be suppressed, given that the second warrant relied solely on "tainted evidence" as the basis for probable cause. App'x 28-29. In addition, Tompkins argued that the August 2019 search warrant application, by specifically referencing the SD card in its identification of the device to be examined, demonstrated that "law enforcement was aware that the April warrant was deficient for failing to name the SanDisk Micro SD Card as a place to be searched." App'x 30. In such circumstances, Tompkins contended, the good faith exception was inapplicable. *Id.*

District Judge Thomas McAvoy conducted an evidentiary hearing to determine whether Tompkins's motion to suppress should be granted. Investigator Kozel, who by then had retired from the CCU, was the principal witness.[5]

---

[5] Deputy Marshal Imburgio testified regarding the process by which he procured the April 2019 search warrant and how the cellular phone was stored and transferred to CCU. Special Agent Seymour was present to testify. However, he was not called to testify after Tompkins made clear that he was not asserting that "the second search

Investigator Kozel testified that he served in the CCU for nearly 13 years, during which time he received "over 3,600 hours" of specialized training in digital forensics, obtained a Master of Science degree in forensic computing and cybercrime investigation, and examined "around 600 cellular phones" in connection with various investigations. App'x 99:4:16–17; App'x 100:5:1–14; App'x 101:12:7–9. He stated that "between 25 and 50 percent" of the cellular phones that he examined during this time contained SD cards. App'x 101:12:10–13.

An SD card, Investigator Kozel testified, is "a type of flash media" and flash media is a "type of storage" on an electronic device. App'x 100:6:1–12. The purpose of an SD card, he continued, is "typically [to provide] additional storage [space]" to the cellular phone. App'x 100:6:15–16. The cellular phone will "install . . . its own file system so that it can utilize the [SD card]" as soon as the SD card is inserted. App'x 100:6:19–22. The phone's utilization of a given SD card is thereafter affected by user preferences: "The operating system may ask if [a user] want[s] to store [their] pictures there, . . . as opposed to [in] the internal memory

warrant was done in bad faith," and that he had referenced the warrant's explicit inclusion of the SD card in its definition of the devices to be searched simply to show that the government "recognized there was a problem with the first search warrant." App'x 114.

of the phone." App'x 100:6:23–25. In that way, a cellular phone "communicat[es]" with the SD card, such that the SD card "become[s] an extension of [the cellular] device" once inserted. App'x 100:7:11–15; App'x 100:8:24–101:9:1.

After providing additional background information on the function and role of an SD card in a cellular phone, Investigator Kozel testified about his initial examination of the Samsung cellular phone in this case. Investigator Kozel stated that the Samsung cellular phone was protected by a PIN code, and that despite checking with the lab for tools to bypass the code, he was unsuccessful. Thus, he "moved on" to the pieces that he could analyze, which included the inserted SD card. App'x 103:20:1–4. He had previously testified that the April 2019 warrant "appeared very clear." App'x 103:18:1. Acknowledging that the search warrant did not specifically identify the SD card as a subject device, App'x 103:18:8–10, Investigator Kozel explained that the SD card was "part of the overall device," App'x 105:25:14, because it was "durably attached" to the cell phone, App'x 105:25:19, and that evidence of a SORNA violation "could be potentially found on any part of th[e cellular] device," App'x 105:27:8–9.

Tompkins's defense counsel cross-examined Investigator Kozel on his belief that the search warrant authorized his search of the SD card. Asked whether he had seen search warrants for computers that separately identified media storage devices as components to be searched, Investigator Kozel responded, "[s]ometimes, yes." App'x 107:33:4–8. He clarified that this was not a "standard" practice across federal agencies because "all [search warrants are] written a little differently," and "do not all look alike" or "use the same wording." App'x 107:33:9–20. For that reason, Investigator Kozel affirmed, it was not "unusual" that the second warrant application, submitted by the FBI, separately listed the SD card as subject property to be searched. App'x 107:34:6–9 (affirming that "[d]ifferent agencies do different things in their description in the search warrant").

The defense next probed Investigator Kozel on his reliance on the April 2019 warrant, asking whether, in his opinion, the warrant authorized a search of the SD card. To that, Investigator Kozel responded: "It authorizes me to search the Samsung phone, which is all inclusive," and that based on his experience "[i]t's standard, standard practice that everything in a device is part of that device unless it's found separately." App'x 108:37:13–14,18–20. Such an approach would

hold, he testified, even if items within the device, "such as batteries, SIM cards, and network connecting devices," were removed and arrived to him in the same evidence bag.   App'x 108:38:1–10.   "The only exception would be if it was obviously a disparate type of device," like if "[there was] a hard drive with a cellphone," since a hard drive "obviously doesn't fit in the cellphone."   App'x 108:38:24–108:39:5 (explaining, in that circumstance, that he "would not say that [the hard drive is] a cellphone").

### B.  The District Court's Order

On January 28, 2021, the district court issued an order denying Tompkins's motion to suppress the evidence found on the SD card.   The court declined to reach the question whether the April 2019 warrant authorized a search of the SD card.   Instead, the district court, crediting Investigator Kozel's "understanding based upon his experience, training, and education that an SD card attached to a cellular phone is part of the data storage capabilities of that phone," determined that "it was objectively reasonable" for Investigator Kozel to "'move on' to a forensic examination of the SD [c]ard" once he determined that he could not access the phone itself.   App'x 158.   The district court found that "Investigator Kozel acted in good faith reliance upon his understanding of what constitutes the

component parts of a cellular phone and the data storage capabilities of such a device with an attached SD card." *Id.* Therefore, "the good faith exception to the exclusionary rule" was applicable. App'x 159.

Tompkins thereafter pleaded guilty to possessing child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2), reserving the right to seek appellate review of the district court's denial of his motion to suppress pursuant to Federal Rule of Criminal Procedure 11(a)(2). [6] This appeal followed Tompkins's sentencing on March 16, 2022.

## DISCUSSION

The district court denied Tompkins's motion to suppress without reaching the question whether the April 2019 warrant authorized Investigator Kozel's search of the SD card on the ground that the Investigator's reliance on that warrant was objectively reasonable and that the good faith exception to the exclusionary rule applied. We affirm on the alternative ground that Investigator Kozel's search of the SD card was fully consistent with the Fourth Amendment—that the forensic examination of the SD card fell within the scope of the April 2019 warrant, which properly authorized it. Neither Investigator Kozel's examination of the

---

[6] Tompkins had pleaded guilty to the SORNA violation in September 2019.

SD card for evidence of Tompkins's failure to register nor his discovery of the four images of child pornography that resulted in law enforcement obtaining and executing the August 2019 warrant violated the Fourth Amendment. Accordingly, Tompkins's motion to suppress was properly denied.

\* \* \*

The Warrant Clause of the Fourth Amendment prohibits any warrant from issuing that fails to "particularly describe[] the place to be searched, and the persons or things to be seized." U.S. CONST. AMEND. IV. As we previously summarized in *United States v. Galpin*, this so-called "particularity requirement" contains three parts. "First, a warrant must identify the specific offense for which the police have established probable cause. . . . Second, a warrant must describe the place to be searched. . . . Third, the warrant must specify the 'items to be seized by their relation to designated crimes.'" *United States v. Galpin*, 720 F.3d 436, 445-46 (2d Cir. 2013) (internal citations omitted).

We have repeatedly affirmed that a warrant passes constitutional muster as to the description of the place to be searched when the description defines the search location with practical accuracy rather than absolute precision. *See Nat'l City Trading Corp. v. United States*, 635 F.2d 1020, 1024 (2d Cir. 1980) ("[W]e are

concerned primarily with the 'practical accuracy' of the description of the premises to be searched.") (quoting *United States v. Fitzmaurice*, 45 F.2d 133, 135 (2d Cir. 1930)); *Fitzmaurice*, 45 F.2d at 135 (noting that "the description of the premises need only define the search with practical accuracy"); *see also United States v. Voustianiouk,* 685 F.3d 206, 211 (2d Cir. 2012) ("It is long-established that '[i]t is enough if the description is such that the officer with a search warrant can, with reasonable effort ascertain and identify the place intended.'") (quoting *Steele v. United States*, 267 U.S. 498, 503 (1925)). In the context of electronic device searches, we have previously observed that digital information is "not maintained, like files in a file cabinet, in discrete physical locations," but instead is often "'fragmented' on a storage device, potentially across physical locations." *United States v. Ganias*, 824 F.3d 199, 213 (2d Cir. 2016) (en banc). We have also noted that "[t]he Fourth Amendment does not require [that search warrants include] a perfect description of the data to be searched and seized," including search warrants for digital data. *United States v. Ulbricht*, 858 F.3d 71, 100 (2d Cir. 2017), *abrogated on other grounds by Carpenter v. United States*, 585 U.S. 296 (2018). Our focus on practical accuracy, as opposed to technical precision, thus extends to warrants authorizing the search of electronic devices. *Accord United States v. Ivey*,

91 F.4th 915, 918 (8th Cir. 2024) (holding that a warrant to search anywhere in a defendant's cell phone for evidence related to firearms possession satisfied the particularity requirement because "the [particularity] requirement is one of 'practical accuracy rather than a hypertechnical one'"); *United States v. Palms*, 21 F.4th 689, 698 (10th Cir. 2021) (finding that a warrant for "all digital evidence" of human trafficking in a defendant's devices was sufficiently particular because "practical accuracy rather than technical precision controls the determination of whether a search warrant adequately describes the place to be searched"); *see also United States v. Blakeney*, 949 F.3d 851, 862 (4th Cir. 2020) ("When it comes to particularity, we construe search warrants in a 'commonsense and realistic' manner, avoiding a 'hypertechnical' reading of their terms."); *United States v. Bradley*, 644 F.3d 1213, 1259 (11th Cir. 2011) (stating that the particularity "requirement does not necessitate technical perfection; instead, it is applied with 'a practical margin of flexibility.'").

Tompkins argues that the April 2019 warrant did not authorize the search of the SD card inserted into his Samsung cellular phone because the warrant did not specifically reference the SD card as subject property in Attachment A. Instead, Attachment A states that "[t]he property to be searched is a Samsung

Model SM-J336AZ cell phone bearing serial number R28K53A6L4T currently located in the United States Marshals Service evidence locker located in Albany New York (hereinafter the SUBJECT DEVICE)." App'x 34. Tompkins contends that because the SD card has its own serial number, can be removed from the cellular phone, and can operate independently of it, the SD card is a separate device beyond the scope of the April 2019 warrant. For the following reasons, we disagree.

"We 'look directly to the text of the search warrant to determine the permissible scope of an authorized search.'" *United States v. Johnson*, 93 F.4th 605, 613 (2d Cir. 2024) (quoting *United States v. Bershchansky*, 788 F.3d 102, 111 (2d Cir. 2015)). Here, Attachment A specifically states that "[t]his warrant authorizes the forensic examination" of the referenced phone "for the purpose of identifying the electronically stored information described in Attachment B." App'x 34. And Attachment B, in turn, specifies not only the type of digital information sought but also that such information includes "all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, *including any form of computer or electronic storage (such as flash memory or other media that can store data)* and any photographic form." App'x at 35 (emphasis added).

This language clearly encompasses the forensic examination of information stored not only in the cellular phone itself, but also in the SD card that was found inserted into the phone when the phone's back cover was removed.    As the Ninth Circuit has noted in a different context, "SD cards are the dominant form of flash memory card on the market, and are widely used in cellular phones, digital cameras, audio players, and other forms of mobile electronics" to augment the storage capacity of these devices.    *Samsung Elecs. Co., Ltd. v. Panasonic Corp.*, 747 F.3d 1199, 1201 (9th Cir. 2014).    *See also United States v. Orzco*, 41 F.4th 403, 406 n.3 (4th Cir. 2022) ("A micro-SD card [operates as] an external storage device used to augment the storage of or transfer files between electronic devices such as cellphones and tablets.").   Thus, by using the terms "electronic storage," "flash memory," and "other media" to describe the form in which a cellular phone may "create[] or store[]" electronic information, the search warrant contemplated a search of not only the phone itself, but any SD card inserted into it.    *See United States v. Simpson*, 152 F.3d 1241, 1248 (10th Cir. 1998) (recognizing "no authority finding that computer disks and hard drives are closed containers somehow separate from the computers themselves").

Tompkins attempts to avoid this conclusion by relying on our observation in *United States v. Galpin*, 720 F.3d 436, 447 (2d Cir. 2013), that there is a "heightened sensitivity to the particularity requirement in the context of digital searches." Br. of Defendant-Appellant Tompkins at 31-32. This effort is unavailing. The warrant in *Galpin* was deemed facially overbroad because, *inter alia*, it purported to authorize a search of Galpin's electronic equipment for evidence of *any* violations of "'NYS Penal Law and or Federal Statutes.'" *Galpin*, 720 F.3d at 447. *See also United States v. Rosa*, 626 F.3d 56, 62 (2d Cir. 2010) (noting infirmity in a warrant that failed to provide "guidance as to the type of evidence sought" by purporting to authorize seizure of electronic equipment without specification of legal violation). And to the extent the *Galpin* warrant authorized a search of such equipment for evidence of violation of a specific offense, it failed to "describe with adequate particularity the 'items to be seized by their relation to designated crimes.'" *Galpin*, 720 F.3d at 450 (emphasis omitted) (quoting *United States v. Williams*, 592 F.3d 511, 519 (4th Cir. 2010)).

The April 2019 warrant suffers from no such infirmities. It specifies that forensic examination of the cellular phone and any associated electronic storage is authorized for the purpose of identifying digital information evidencing a specific

offense—namely, Tompkins's SORNA violation. [7]   The warrant further particularizes the type of evidence sought: specifying, for instance, evidence indicating Tompkins's location and residence; his employment; and his registration as a sex offender.   True, the April 2019 warrant broadly authorizes the search of Tompkins's entire phone and any storage devices attached to it.   But as we have said before, "a search warrant does not necessarily lack particularity simply because it is broad. . . . [S]earches of computers may sometimes need to be as broad as searches of residences pursuant to warrants."   *Ulbricht*, 858 F.3d at 100.   *See also Johnson*, 93 F.4th at 615 (noting that "so long as a warrant seeking digital evidence is sufficiently particular," it may properly seek a broad range of potentially relevant material); *United States v. Purcell*, 967 F.3d 159, 181 (2d Cir. 2020) ("[W]arrants which authorize broad searches of both digital and non-digital locations may be constitutional, so long as probable cause supports the belief that the location to be searched . . . contains extensive evidence of suspected crimes.").

---

[7] Tompkins does not challenge the probable cause set forth in Deputy Marshal Imburgio's affidavit that evidence of Tompkins's commission of this offense would likely be found in the course of this forensic examination.   Tompkins argues, however, that there was only a "tenuous" showing of probable cause and that we should take this into account in considering the "totality of the circumstances."   Br. of Defendant-Appellant Tompkins at 40-41.   But Tompkins cites no authority for the proposition that the Fourth Amendment's particularity requirement is subject to a totality of the circumstances analysis that takes into account the strength of the showing of probable cause.

The district court found the preceding analysis, along with Investigator Kozel's testimony, compelling evidence that the particularity requirement had not been violated in this case. Yet, the court hesitated to reach this conclusion because the FBI separately identified the SD card and the cellular phone in the August 2019 warrant application to authorize a search for evidence of child pornography offenses. Specifically, the court said that the second warrant "provides some indication of a policy or practice . . . to separately identify cellular phones and SD cards in search warrant applications, at least where it is evident that an SD card is inserted into a cellular phone." App'x 155. But as already stated, we look to "the text of the search warrant to determine the permissible scope of an authorized search." *Johnson*, 93 F.4th at 613 (quoting *Bershchansky*, 788 F.3d at 111). And the sufficiency of a warrant's description of the places to be searched does not depend on the policies or practices of different government agencies. The fact that the FBI specifically referenced the SD card in the August 2019 warrant application—after the SD card was clearly known to exist, to have been removed from the cellular phone, and to contain images of child pornography—does not undercut the language in the April 2019 warrant

authorizing the search of any electronic storage, including flash memory, discovered during the forensic examination of the phone.[8]

Tompkins repeatedly returns to the proposition that an SD card is a separate device that must be specifically identified in a warrant application because it has a "unique serial number" and is removable from a cellular phone, even if it may also be attached to it. Br. of Defendant-Appellant Tompkins at 26, 34, 39. He further argues that because Deputy Marshal Imburgio described wireless telephones and "memory card[s] or other removable storage data" in different parts of his affidavit, a removable SD card providing additional storage to a cellular phone cannot fall within the scope of a warrant identifying the phone itself as the subject device. *Id.* at 35. Again, we disagree.

---

[8] Tompkins suggests that law enforcement agents "knew" that there was an SD card in the back of his cellular phone at the time the April 2019 warrant issued and withheld this information from the Magistrate Judge. Br. of Defendant-Appellant Tompkins at 27. But Tompkins offers no reason why the agents would have suppressed this information, since the probable cause to search his phone would have encompassed an attached SD card as well. More to the point, the district court did not find that the agents had withheld this information; it noted that the evidence presented at the hearing showed that the phone's back cover had been removed while the phone was in the custody of the USMS, "to allow the battery to be taken out," thus "display[ing] the SD port with the SD card inserted" but that there was "no testimony indicating that anyone at the USMS was specifically aware that the subject phone contained an SD card. . . ." App'x 155.

The mere fact that various components of Tompkins's cellular phone (such as its battery, camera, or the SD card inserted into the phone's back) may have their own serial numbers is not dispositive to the question whether the April 2019 search warrant authorizes their search. And the fact that an SD card can be removed from a phone and is easily portable does not undercut that warrant's authorization to conduct a forensic examination of the SD card here, found inserted into the back of Tompkins's phone, for the purpose of locating digital information stored in its memory relevant to Tompkins's failure to register. *See United States v. Beckmann*, 786 F.3d 672, 678 (8th Cir. 2015) (concluding that consent to search a computer was reasonably understood to encompass its external, connected hard drive). *See also United States v. Wilson*, 2019 WL 4740509, at *4 (W.D. Mo. Sept. 27, 2019) (applying *Beckman* in holding that a search warrant for a cellular phone was not required to specifically reference a Micro SD card inserted into the phone because the Micro SD card "amounted to a component part of the . . . phone").

Finally, given the text of the warrant, it is also beside the point that Deputy Marshal Imburgio, in outlining technical terms in his affidavit pertaining to searches for digital information, separately discussed cellular phones and

removable storage media.    The warrant itself, in Attachment B, authorizes search of the phone for evidence contained in "electronic storage (such as flash memory or other media that can store data)," which includes evidence to be found on an SD card.    *See United States v. Ventresca*, 380 U.S. 102, 109 (1965) ("[C]ourts should not invalidate . . . warrant[s] by interpreting . . . affidavit[s] in a hypertechnical, rather than a commonsense, manner."). *See Voustianiouk*, 685 F.3d at 211 ("In determining the permissible scope of a search that has been authorized by a search warrant, however, we must look to the place that the magistrate judge who issued the warrant intended to be searched.").    Deputy Marshal Imburgio's affidavit is not to the contrary.

*        *        *

In sum, we conclude that the April 2019 warrant properly authorized search of Tompkins's cellular phone and the SD card inserted into that phone.    We have considered Tompkins's remaining arguments to the contrary and conclude that they are without merit.    Having determined that the government's initial examination of the SD card did not run afoul of the Fourth Amendment, we discern no error in the district court's denial of Tompkins's motion to suppress. Accordingly, we AFFIRM the judgment of the district court on this alternative

ground, without reaching Tompkins's argument on appeal that the district court erred in applying the good faith doctrine. *See Wells Fargo Advisors, LLC v. Sappington*, 884 F.3d 392, 396 n.2 (2d Cir. 2018) ("[W]e are free to affirm on any ground that finds support in the record, even if it was not the ground upon which the trial court relied.") (quoting *Headley v. Tilghman*, 53 F.3d 472, 476 (2d Cir. 1995)).